UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JAMES HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>CAPTAIN PONGYAN, et al.,<br><br>Defendants. | No. 2: 21-cv-0846 KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's May 10, 2021 motion for a temporary restraining order. (ECF No. 2.) For the reasons stated herein, the undersigned recommends that this motion be denied.

Legal Standard for a Temporary Restraining Order

A temporary restraining order is an extraordinary remedy and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." See Fed. R. Civ. P. 65(b)(1)(A). A preliminary injunction represents the exercise of a far-reaching power not to be indulged except in a case clearly warranting it. Dymo Indus. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964). "A preliminary injunction … is not a preliminary adjudication on the merits but rather a

device for preserving the status quo and preventing the irreparable loss of rights before judgment." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (internal quotations omitted). The Ninth Circuit's sliding-scale test for a preliminary injunction has been incorporated into the Supreme Court's four-part Winter's standard. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (explaining that the sliding scale approach allowed a stronger showing of one element to offset a weaker showing of another element). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Id. at 1131-32 (citations omitted). A plaintiff "must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." Id. at 1131.

Discussion

*Background*

In the complaint, filed May 10, 2021, plaintiff alleges that defendant Pongyan put plaintiff up for transfer to the R. J. Donovan Correctional Facility ("RJD"), caused plaintiff to be unnecessarily quarantined and interfered with the filing of the instant action in retaliation for plaintiff filing a grievance against them.

In particular, plaintiff alleges that on November 10, 2020, the Institutional Classification Committee ("ICC") at California State Prison-Sacramento ("CSP-Sac") recommended plaintiff for transfer to the California Men's Colony ("CMC"). The ICC later endorsed plaintiff for transfer to RJD. The ICC endorsement stated that plaintiff had a "confidential enemy situation" at RJD, but the enemy was not on plaintiff's yard.

Plaintiff expressed his safety concerns regarding the transfer to RJD to his counselor. Plaintiff also told his counselor that CMC had every program plaintiff needed to be found suitable

for parole. Plaintiff's counselor agreed to put plaintiff back up for transfer to CMC after the endorsement expired. Plaintiff alleges that his counselor also told him that due to the COVID-19 pandemic, there would be no transfers for months.

Plaintiff alleges that on March 26, 2021, he filed a grievance against defendant Pongyan based on defendant Pongyan's alleged failure to wear a mask on the yard. At the time plaintiff signed his complaint on May 9, 2021, he had received no response to this grievance.

Plaintiff alleges that after he filed the grievance against defendant Pongyan, he was put up for a special transport to RJD. Plaintiff alleges that defendant Pongyan caused him to be put up for a special transport to RJD, where his life would be in danger, in retaliation for plaintiff filing the grievance against them. Plaintiff also alleges that defendant Pongyan retaliated against plaintiff by causing plaintiff to be unnecessarily quarantined and interfering with the filing of the instant action.

On May 13, 2021, the undersigned found that plaintiff stated potentially colorable retaliation claims against defendant Pongyan. (ECF No. 6.) The undersigned granted plaintiff thirty days to file an amended complaint as to the other claims and defendants discussed in the complaint. (Id.) On May 24, 2021, plaintiff filed a notice to proceed with the retaliation claims against defendant Pongyan and to dismiss the remaining claims and defendants. (ECF No. 14.)

On May 10, 2021, plaintiff filed the pending motion for a temporary restraining order. (ECF No. 2.) In this motion, plaintiff sought an order prohibiting his transfer to RJD. (Id.) Plaintiff alleged that defendant Pongyan put him up for transfer to RJD, putting his safety at risk, in retaliation for filing the grievance against them. (Id.) On May 13, 2021, the undersigned directed Supervising Deputy Attorney General Monica Anderson to file a response to plaintiff's motion for injunctive relief within fourteen days.[1] (ECF No. 8.)

////

---

[1] See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (recognizing an arbitrary confiscation and destruction of property, *initiation of a prison transfer,* and assault as retaliation for filing inmate grievances) (emphasis added); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (finding that a *retaliatory prison transfer* and double-cell status can constitute a cause of action for retaliation under the First Amendment) (emphasis added).

3

On May 27, 2021, the Office of the Attorney General ("OAG") filed a response to plaintiff's motion for injunctive relief. (ECF No. 15.)

*Legal Standard for Retaliation Claim*

A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

*The OAG's Response*

The pending motion only addresses plaintiff's claim that he is being transferred to RJD in retaliation for filing a grievance against defendant Pongyan. In the response, the OAG addresses plaintiff's other retaliation claims, i.e., defendant Pongyan retaliated against plaintiff for filing a grievance against them by causing plaintiff to be unnecessarily quarantined and interfering with the filing of the instant action. Although the pending motion does not concern these other claims, the undersigned sets forth the OAG evidence regarding these other claims herein.

The OAG submitted the declaration of the CSP-Sac Litigation Coordinator K. Albain. K. Albain states that plaintiff's case was considered at an annual Unit Classification Committee hearing on November 10, 2020, at which time the Committee recommended that plaintiff transfer to CMC-III Enhanced Outpatient Program ("EOP"), with an alternate transfer to RJD-III EOP for A Facility only. (ECF No. 15 at 14-15.) The recommendation for transfer to either CMC-III EOP or RJD-III EOP Facility A was based on plaintiff's case factors, as he was a Level III inmate who required EOP level of care. (Id. at 15.) The recommendation for RJD-III EOP Facility A took into consideration that plaintiff had a confidential enemy at RJD-III EOP Facility B, but noted that the inmates at the two facilities do not intermingle, and the Committee concluded that plaintiff could safely house and program at RJD-III Facility A. (Id.)

K. Albain states that as of November 10, 2020, CMC-III EOP was closed to intake due to the COVID-19 pandemic. (Id.) As a result, plaintiff was endorsed to RJD-III EOP Facility A on November 17, 2020, and this endorsement was set to expire on May 16, 2021. (Id.) The

4

endorsement was issued by a Classification Staff Representative, not defendant Pongyan. (Id.) Per this endorsement, plaintiff was scheduled for transfer to RJD-III EOP Facility A in April 2021, so that the transfer could be completed before the endorsement expired, which would require conducting another Unit Classification Committee. (Id.)

K. Albain states that the endorsement to RJD-III EOP Facility A, including the expiration date of this endorsement, was completed prior to the alleged encounter with defendant Pongyan on March 22, 2021, and plaintiff's purported attempt to file the complaint in this action on March 26, 2021. (Id.)

Defendants also filed the declaration of defendant Pongyan. Defendant Pongyan states that they first started working at CSP-Sac in mid-January 2021. (Id. at 10.) Defendant Pongyan states that they were not involved in the endorsement of plaintiff to RJD-III EOP Facility A on November 17, 2020. (Id.)

Defendant Pongyan states that they recall discussing "this issue" with plaintiff when plaintiff walked toward the Captain's Office. (Id.) Plaintiff stated that he was going to file a grievance against defendant Pongyan for not wearing an approved facial covering. (Id. at 10-11.) Defendant Pongyan told plaintiff to file the grievance, since it was his right to do so. (Id. at 11.) Defendant Pongyan states that it is their understanding that the grievance was later determined to be unfounded. (Id.)

Defendant Pongyan first became aware that plaintiff was scheduled for transfer to RJD, per the November 17, 2020 endorsement, on April 13, 2021, when they were informed that plaintiff was refusing a Point of Care ("POC") test for COVID-19 and was refusing to pack his belongings. (Id.) C. Berke, a Correctional Counselor II and Assistant Classification and Parole Representative, pointed out that under CDCR policies, the refusal to take a POC COVID-19 test required the inmate to be quarantined for twenty-one days. (Id.) Defendant Pongyan asked a correctional sergeant to ask plaintiff a second time if he would take the POC COVID-19 test and was informed that plaintiff refused again. (Id.) Defendant Pongyan then informed C. Berke of the second refusal, and C. Berke proceeded to cancel the transport to RJD, which had been scheduled for April 14, 2021. (Id.) Plaintiff was then quarantined for twenty-one days based on

5

his refusal to take the POC COVID-19 test, per CDCR policies. (Id.)

Defendant Pongyan states that plaintiff then went on a hunger strike. (Id.) Defendant Pongyan spoke with plaintiff on April 19, 2021, about the hunger strike. (Id.) Previously, plaintiff had stated to Correctional Sergeant Uribe that he wanted to transfer to CMC because it offered programs plaintiff needed to parole, but RJD did not. (Id.) Plaintiff also told defendant Pongyan that he did not want to transfer to RJD for the same reason. (Id.) Defendant Pongyan told plaintiff that he did not know which programs were offered at RJD since he had never been there, and that plaintiff should give that institution a try. (Id.) Defendant Pongyan states that it is their understanding that CMC was closed to intake at that time and they also advised plaintiff to speak with his correctional counselor about this matter. (Id.)

Defendant Pongyan states that during this interview, plaintiff also stated, "I just tested on Friday and I tested negative, I test weekly since I'm a worker," "What you can do it [sic] take me back to committee and endorse me to CMC?" and "What do I need to do to end to [sic] Hunger Strike?" (Id.) Defendant Pongyan told plaintiff that the November 17, 2020 endorsement was still appropriate. (Id.) Defendant Pongyan did not feel that a new committee was warranted because his case factors had not changed since his last committee. (Id. at 11-12.) Defendant Pongyan also felt that plaintiff was trying to use the hunger strike to manipulate his housing situation. (Id. at 12.) Defendant Pongyan expressed to plaintiff the importance of drinking water and eating, but he would not confirm that he was drinking water. (Id.) At the conclusion of the interview, plaintiff said he would not go to RJD and would have to be extracted from his cell. (Id.)

Defendant Pongyan states that on May 10, 2021, he observed plaintiff in the law library and asked the librarian if plaintiff had completed the twenty-one day quarantine. (Id.) Defendant Pongyan denies telling the librarian that she should not file any legal work with the courts submitted by plaintiff because he would be getting on the bus soon. (Id.)

Finally, the OAG submitted a declaration by Correctional Counselor D. Clain who states that on the morning of May 10, 2021, they were with defendant Pongyan in the Facility A law library. (Id. at 17.) D. Clain heard defendant Pongyan ask the law librarian whether plaintiff was

supposed to be on quarantine, and then say that she would look into it. (Id.) D. Clain states that defendant Pongyan did not tell the librarian that plaintiff's legal materials should not be filed with the courts because he was to be transferred. (Id. at 17-18.)

*Discussion*

In his complaint, plaintiff alleges that although he was endorsed for transfer to RJD, his counselor told him that there would be no transfers for months due to the COVID-19 pandemic. Plaintiff alleges that his counselor told plaintiff that after the endorsement for transfer to RJD expired, the counselor would put plaintiff up for transfer to CMC. Plaintiff alleges that in retaliation for filing a grievance against them, defendant Pongyan caused plaintiff to be put up for "special transport" to RJD.

In summary, the OAG's evidence demonstrates that plaintiff was endorsed for transfer to RJD on November 17, 2020, and the endorsement expired on May 16, 2021. The OAG evidence demonstrates that the Unit Classification Committee determined that plaintiff could be safely housed at RJD. The OAG evidence demonstrates that plaintiff was scheduled for transfer to RJD in April 2021 so that the transfer could be completed before the expiration period. The OAG evidence demonstrates that defendant Pongyan did not participate in the November 2020 decision to transfer plaintiff to RJD or the scheduling of plaintiff's transfer to RJD in April 2021.

The OAG evidence does not support plaintiff's claim that defendant Pongyan caused plaintiff to be scheduled for "special transport" to RJD in April 2021 in retaliation for plaintiff filing a grievance against them. The record contains no evidence demonstrating that plaintiff was scheduled for a "special transport" to RJD in April 2021 or that RJD was not otherwise accepting inmates from other prisons. In other words, the scheduling of plaintiff's transfer to RJD was not out of the ordinary. For these reasons, the undersigned finds that plaintiff has not demonstrated a likelihood of success on the merits of his claim that he is being transferred to RJD in retaliation for filing a grievance against defendant Pongyan.

The OAG evidence also demonstrates that if plaintiff transfers to RJD, he will not be housed on the same housing facility as his confidential enemy. For this reason, the undersigned finds that plaintiff has not demonstrated that he is likely to suffer irreparable harm if his request

for injunctive relief is not granted.

Because plaintiff has not demonstrated a likelihood of success on the merits of the at-issue retaliation claim or that he is likely to suffer irreparable harm if his request for injunctive relief is not granted, plaintiff's motion for a temporary restraining order should be denied.

The undersigned also observes that plaintiff is still housed at CSP-Sac. Because plaintiff's transfer endorsement for RJD expired, a new Unit Classification Committee will have to consider the issue of plaintiff's transfer. For these reasons, plaintiff's motion for injunctive relief is arguably moot.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall assign a district judge to this action; and

IT IS HEREBY RECOMMENDED that plaintiff's motion for a temporary restraining order (ECF No. 2) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 8, 2021

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Harr846.57

8